CAMDEN FIRE INS. ASS'N v. MISSOURI, K. & T. RY. CO. OF TEXAS et al. (No. 7239.)

(Court of Civil Appeals of Texas. Dallas. March 20, 1915. Rehearing Denied April 24, 1915.)

1. APPEAL AND ERROR ⊜⇒569—STATEMENT OF FACTS—PREPARATION—"PARTY."

Rev. St. 1911, art. 2068, authorizing a statement of facts to be made up by agreement, and article 2069, authorizing submission, where the parties cannot agree, of their respective statements to the judge, who shall make out, sign, and file a correct statement, were not superseded or repealed by Acts 31st Leg. (1st Called Sess.) c. 39, providing for the appoint-

ment of official stenographers and prescribing their qualifications and duties; the word "parties," as used in the provision of such act, which is incorporated in Rev. St. 1911, art. 2072, reading, "Nothing in the act shall be so construed as to prevent parties from preparing statements of fact on the appeal independent of the transcript of the notes of the official shorthand reporter," referring to the party appealing, and such proviso not meaning that the official stenographer's report can be dispensed with only by the agreement of the parties.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 2530–2545; Dec. Dig. ☞569.

For other definitions, see Words and Phrases, First and Second Series, Party.]

**2. STATUTES ☞189—CONSTRUCTION—LEGISLATIVE INTENT.**

In construing a statute, the legislative intent, rather than the literal meaning of the language used or of isolated provisions, must govern.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 268; Dec. Dig. ☞189.]

**3. INSURANCE ☞606—SUBROGATION—RIGHTS OF INSURED — DEDUCTION OF EXPENSES OF SUIT.**

Where, in an insurance company's action against a railroad company and the insured to recover the insurance money paid by plaintiff to the insured, it appeared that insured had collected the amount of his loss by fire from the railroad company through a suit of which the insurance company had knowledge, but did not seek to prosecute, and where it appeared that, though insured had offered to permit the insurance company to be subrogated to a proportionate part of his rights against the railroad company if it would pay the amount of the insurance, and that it had denied liability until after the judgment was obtained against the railroad company, the insured was liable only for the surplus remaining in his hands after satisfying his loss in full and the reasonable expenses incurred by him in prosecuting the suit against the railroad company, even though, during the pendency of his suit against the railroad company, he may have assumed an attitude of hostility against the insurance company's right of subrogation.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1504–1511, 1514–1516; Dec. Dig. ☞606.]

Error from District Court, Dallas County; J. C. Roberts, Judge.

Action by the Camden Fire Insurance Association against the Missouri, Kansas & Texas Railway Company of Texas and another. Judgment for defendants, and plaintiff brings error. Affirmed.

E. G. Senter, of Dallas, for plaintiff in error. Harry P. Lawther, of Dallas, and W. T. Russell, of Nocona, for defendants in error.

TALBOT, J. The plaintiff in error, Camden Fire Insurance Association, brought this suit against the defendants in error, Missouri, Kansas & Texas Railway Company of Texas and C. McCall, to recover $654.50, the amount paid by said insurance association to said McCall upon a policy of fire insurance covering certain property owned by said McCall and destroyed by fire. The material facts are substantially as follows: The Camden Fire Insurance Association executed and delivered to the defendant in error C. McCall its policy of fire insurance in the sum of $600, thereby insuring against loss by fire in the sum of $200 a warehouse building situated near the railroad track of said railway company owned by said McCall, and in the sum of $400 a lot of corn contained in said building, all situated in the town of Nocona, Tex. While this policy was in force said property was destroyed by fire as a result of the negligence of the railway company. After the fire Mr. Dargan, the adjuster for the Camden Fire Insurance Association, called on McCall and talked with him about the adjustment of the loss. Dargan then agreed that the loss was entire, and asked McCall if he would assign the amount of the policy to him against the railroad company, and McCall replied that he would. McCall says he then thought it was agreed that Dargan was to give him a draft in full settlement of the policy. He further says that a few days after Mr. Dargan left Nocona he got a letter from him in which Mr. Dargan denied any liability on the policy and refused to pay him anything at all, and offered him his premium back. This letter was introduced in evidence and confirms the statement of the witness. On December 24, 1909, the insured, McCall, brought suit in the district court of Montague county, Tex., against the Camden Fire Insurance Association, on the policy issued to him, and on the same day sued the Missouri, Kansas & Texas Railway Company of Texas, alleging that the property covered by the said fire insurance policy had been destroyed as the result of the negligence of its agents and servants. Thereafter, on the 25th day of January, 1911, McCall recovered judgment against the said railway company for the sum of $1,324.75, being the value of his property as determined by the jury; and on the 7th day of August, 1911, McCall recovered judgment against the Camden Fire Insurance Association on its policy of insurance for the sum of $654.50, the same being the amount of said policy and interest to that date. The policy of insurance issued by the Camden Fire Insurance Association to McCall contained the following stipulation:

"If this company shall claim that the fire was caused by the act or neglect of any person or corporation, private or municipal, this company shall, on payment of the loss, be subrogated to the extent of such payment to all right of recovery by the insured for the loss resulting therefrom, and such right shall be assigned to this company by the insured on receiving such payment."

George S. Marsh, attorney for McCall, testified that while the suit against the insurance company was pending he offered on behalf of McCall to subrogate the claim of McCall against the railroad company to the extent of the insurance, provided the insurance company would pay its policy; also that he had invited the insurance company to

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

join in the suit against the railroad company. E. G. Senter, attorney for the Camden Fire Insurance Association, testified that Marsh had made no offer to execute subrogation to the insurance company, but that he had made an argument before Judge Potter, judge of the district court of Montague county, denying that any right of subrogation existed in favor of the insurance company, while the suit of McCall against the Camden Fire Insurance Association was pending in that court. He testified he was present at the trial of the case against the railroad company, and that Marsh had not invited the insurance company to join in the suit.

The Camden Fire Insurance Association did not in any way make, or seek to make, itself a party to the suit of McCall against the railway company, and set up its right of subrogation under the provision of the policy above quoted. In the suit of McCall against it on the fire insurance policy said insurance association pleaded, as is shown by its second amended original answer which was introduced in evidence by it on the trial of the present case, a general denial, and specially that prior to the fire which destroyed the property covered by the insurance policy McCall had made a contract with the Missouri, Kansas & Texas Railway Company which contained a provision that he should keep said building and its contents insured for the benefit of said railway company against any loss or damage by fire communicated in any manner from the engines or other machinery of said railroad company, and that by reason of said contract the insurance company was cut off from any right of recovery from said railroad company on account of its negligence which caused the destruction of the property, and that because thereof said insurance association was not bound upon said policy of insurance issued to said McCall. Said insurance association further pleaded as defenses in said suit against it by McCall the violation by McCall of several provisions of the policy therein sued on, and asserted that by reason thereof he was not entitled to recover. The judgment obtained by McCall against the insurance company was paid off by the company before the final determination of the suit between McCall and the railroad company. When this action was brought the Missouri, Kansas & Texas Railway Company of Texas had not paid off the judgment obtained against it by McCall, and held said funds in its hands at the time of service of citation upon it herein. McCall paid out on account of expenses incurred by him in his suit against the Missouri, Kansas & Texas Railway Company of Texas sums of money aggregating $489.18. These expenses were set up by the defendant in error McCall in this suit with the prayer that, if the court should find that he was liable to the plaintiff in error for any sum, the amount of said expenses be set off against such sum, etc. The case went to trial June 3, 1913, before the court and a jury, and when the introduction of the evidence was closed the court instructed the jury to return a verdict in favor of the plaintiff in error for the sum of $110.82. Such verdict was by the jury returned, judgment entered in accordance therewith, and the plaintiff in error brings the case to this court by writ of error.

[1] The defendant in error McCall has filed a motion in this court to strike out the statement of facts. The grounds of the motion, in substance, are that in the trial of the case in the court below an official stenographer of that court was present and took shorthand notes of the evidence and testimony adduced; that plaintiff in error did not have such stenographer to prepare and file with the clerk of the court below a transcript of the testimony and evidence given on the trial, and that neither it nor its counsel requested the preparation of such transcript in any form; that the statement of facts filed herein was prepared by the attorney representing the plaintiff in error, and then submitted to, and approved by, the judge who tried the case without the consent of defendant in error McCall or his counsel; that neither defendant in error McCall nor his attorney ever agreed with the plaintiff in error or its attorney that the statement of facts filed herein might be prepared by the attorney of plaintiff in error from his recollection of the facts and filed as a part of the record herein, but at all times insisted that a full and complete statement of facts be made up from the stenographer's notes as prescribed by the statutes relating thereto. In support of this motion the case of Buffalo Bayou Co., Inc., v. Lorentz, 170 S. W. 1052, is cited. This case sustains the contention of the defendant in error, but we are unable to agree to the decision therein rendered. A careful reading and consideration of the several provisions of our statute relating to the preparation of statements of fact in appealed cases leads us to the conclusion that it was not the intention of the Legislature that the method or manner prescribed by articles 1924 and 2070 of the Revised Statutes should be exclusive of the manner prescribed by articles 2068 and 2069, unless the parties to the appeal agree to a statement of facts prepared under the latter statutes. Article 2068 of the statute provides that:

"After the trial of any cause, either party may make out a written statement of the facts given in evidence on the trial, and submit the same to the opposite party, or his attorney, for inspection. If the parties, or their attorneys, agree upon such statement of facts, they shall sign the same; and it shall then be submitted to the judge, who shall, if he find it correct, approve and sign it; and the same shall be filed with the clerk."

Article 2069 provides that:

"If the parties do not agree upon such statement of facts, or if the judge does not approve or sign it, the parties may submit their respective statements to the judge, who shall, from his own knowledge, with the aid of such state-

ments, make out and sign and file with the clerk a correct statement of the facts proven on the trial; and such statement shall constitute a part of the record."

The effect of the decision in Buffalo Bayou Co. v. Lorentz, supra, is, as we understand it, to hold that said articles of the statute (2068 and 2069) have been superseded and rendered nugatory by the act of the Thirty-First Legislature passed at its first called session (Acts 31st Leg. c. 39), providing for the appointment of official stenographers and prescribing their qualification and duties, etc., except in cases where the parties agree to a; preparation of the statement of facts in the manner and form prescribed by said articles. The conclusion reached by the court rendering the decision in the case referred to is based upon its construction of the proviso found in the repealing section of the act of the Thirty-First Legislature mentioned above, which is article 2072 of the Revised Statutes. This proviso is to the effect that:

"Nothing in this chapter shall be so construed as to prevent parties from preparing statements of facts on appeal, independent of the transcript of the notes of the official shorthand reporter."

This provision of the statute, in Buffalo Bayou Co. v. Lorentz, is construed to mean that the official stenographer's report in the preparation; of a statement of facts can be dispensed with only by agreement of the parties, "and does not give to an appellant the right to require the appellee to pass upon a statement prepared by the appellant independent of the stenographer's report," and that "a statement of facts prepared by the parties necessarily means an agreed statement of facts." In this view we do not concur. Article 2068 of the statute authorizes either party to make out a written statement of the facts given in evidence on the trial of a case, and declares that, if the parties, or their attorneys, agree upon such statement, they shall sign it, and shall then submit it to the judge, who shall, if he find it correct, approve and sign it. So signed, it becomes the statement of facts in the case and a part of the record to be sent up on appeal. Article 2069 provides that, if the parties do not agree upon such statement of facts, or if the judge does not approve and sign it, the parties may submit their respective statements to the judge, who shall from his own knowledge, with the aid of such statements, make out and sign and file with the clerk a correct statement of the facts proven on the trial, and such statement so prepared by the judge becomes the statement of facts and a part of the record in the case. These statutes, although passed prior to the act of the Thirty-First Legislature, which took effect in 1909, are found in the Revised Statutes of 1911, as unrepealed laws, and neither of them has been repealed unless said act of the Thirty-First Legislature has that effect. That said act was not intended by the Legislature to have that effect we are quite sure. We think the adoption of the Revised Statutes of 1911, with articles 2068 and 2069 therein as unrepealed laws, and the provisions contained in article 2072 of said statutes, to the effect that nothing in the act of the Thirty-First Legislature passed in 1909 should be so construed as to prevent parties from preparing statements of facts on appeal independent of the transcript of the notes of the official shorthand reporter, manifests the purpose of the Legislature to leave in force and unaffected by articles 1924 and 2070 said articles 2068 and 2069 of the statute, so that the expense of having the statement of facts prepared as directed in articles 1924 and 2070 could be avoided. We are of opinion that the word "parties" in that provision of the statute just referred to, and which forms a part of article 2072, should be construed as having reference to and meaning the party appealing. Such construction, we believe, is not forbidden.

[2] It has been well said that in construing a statute the legislative intent must first be looked to, and this intent must govern, rather than its literal meaning, or the literal meaning of isolated parts; that "the whole scheme had in view by the lawmaking power must be understood and carried out; and, where there are apparent conflicts or inconsistencies between different parts, that construction must be adopted which will give effect to every part, rather than that which will render any portion nugatory and of no avail." Our interpretation of the statute in question is in consonance with the evident intention of the Legislature, and leaves in force to serve the purpose of its enactment article 2069 of the statute. To construe the provision in article 2072 mentioned as limiting the right of an appellant and his attorney to prepare a statement of facts independent of the official stenographer's report, and have it made a part of the record in a case in which the parties to the litigation have agreed to such method, would be to render of no effect and entirely useless article 2069. The motion of defendant in error to strike out the statement of facts will therefore be overruled.

[3] There are several assignments of error presented for a reversal of the case. The first and second complain, respectively, of the refusal of the court to give a special charge requested by plaintiff in error instructing the jury to return a verdict in its favor against the defendants for the sum of $600, with interest, and in charging the jury to find for plaintiff in error in the sum of $110.82. Under the first assignment the plaintiff in error contends that the special charge directing the jury to return a verdict in its favor should have been given: (1) Because the agreed facts showed that the plaintiff had paid defendant McCall upon a policy of fire insurance the sum of $600,.

and interest ($654.50), that the policy contained a clause subrogating the company to the rights of the insured, upon payment of the loss, against any person causing such loss, and that after the payment by the insurance company to McCall of the amount of the policy he recovered judgment against the defendant railway company for the loss, which included the loss upon the property covered by the policy and paid by the insurance company, which judgment had not been paid off by the railway company when this suit was brought; (2) because the law will not permit defendant McCall to enjoy a double recovery for the value of his property destroyed by the fire, as he is seeking to accomplish here. Under the said second assignment of error it is contended that the court's charge directing the jury to return a verdict in favor of the plaintiff in error for $110.82 was error: (1) Because plaintiff in error was entitled to a judgment against the defendants in error, and against each of them, for $654.50, the amount paid by it to McCall, with legal interest thereon from August 7, 1911; (2) because McCall was not entitled to collect from the insurance company any part of the expense of his suit against the railroad company; (3) because, if McCall had been otherwise entitled to prorate with the insurance company in this action the expense of his suit against the railroad company, he lost that right by his attitude of hostility to the claim of the insurance company to subrogation and by his effort to effect a double recovery; (4) because, if McCall was entitled to make a charge against the insurance company on account of the expense of his suit against the railroad company, he could only make a reasonable charge, based on the interest of the insurance company in the recovery; (5) because it affirmatively appears from the testimony of McCall that the charge sought to be made by him against the insurance company on account of the railroad suit is unreasonable; and (6) because the court construed the policy of insurance to be a contract of indemnity against loss or expense through litigation, without any warranty in the policy therefor. Briefly stated, the question raised by the assignments and propositions is whether or not the defendant in error McCall was entitled, under the facts shown, to have the expenses incurred by him in the prosecution of his suit against the Missouri, Kansas & Texas Railway Company of Texas to recover the value of the insured property destroyed by the negligence of said railway company, which amounted to $489.-18, charged against the plaintiff in error, insurance company, and allowed as an offset against, or deducted from, the amount said insurance company was entitled to recover in this suit under the subrogation clause of the fire insurance policy.

We are of opinion that neither of the reasons urged by plaintiff in error requires, or would warrant, a reversal of the case. Its right to subrogation in the event the property insured was destroyed by fire as the result of the act or negligence of a third person or corporation depended, as is shown by the terms of the policy, upon the payment of the loss by it to the insured, and it appears beyond controversy from the evidence, and is not disputed by the insurance company, that before and after McCall's suit against it on the insurance policy, and before and after McCall's suit against the railway company, liability on the policy, for various reasons alleged, was denied, a recovery thereon resisted, and payment refused until after a judgment in both suits in favor of McCall was obtained. This denial of liability and refusal to pay on the part of the insurance company continued after McCall had procured a judgment against the railway company. As shown in our statement of the nature and result of the suit, the judgment against the railway company was rendered on the 25th day of January, 1911, and the judgment against the insurance company on the 7th day of August, 1911; a trial of McCall's suit against the insurance company on the policy having been successfully resisted until that time. It is also undisputed that the insurance company knew of the pendency of McCall's suit against the railway company on the insurance policy, and failed to make or offer to make itself a party to that suit, or in any manner assist in its prosecution, or to contribute anything whatever towards paying the expenses thereof. There is a difference in the testimony of George S. Marsh, attorney for McCall, and E. G. Senter, attorney for the insurance company, the only witnesses who testified on the subject, as to whether the attorney for McCall, after the latter's suit was instituted against the insurance company, invited the insurance company to join in the suit against the railway company and offered on behalf of McCall to execute subrogation of his claim against the railway company if the insurance company would pay the amount of the policy. The attorney for McCall testified that such invitation and such offer were made, and the attorney for the insurance company testified that neither was made. It does, however, very conclusively appear that the attorney for the insurance company was present during the trial of McCall's suit against the railway company, and that the insurance company, with full knowledge of the pendency of said suit and its object, failed in any way to join in its prosecution or to pay any part of the expenses thereof or offer to do so. This was equivalent, practically, to a positive refusal to join in the prosecution of said suit and to contribute to the expense of the same, and sufficient, if the duty rested upon the insurance company to do either, to charge it with the legal consequences of such re-

fusal. The case then stands, we think, as if the subrogation had been offered upon the payment of the policy and the request to join in the prosecution of McCall's suit against the railway company had been made and refused. The question, then, is: Was McCall, he having set up the facts fully, and asked therefor, entitled to have allowed against the insurance company's claim in this suit and deducted from the amount sought to be recovered by it the necessary expenses incurred by him in the prosecution of his suit against the railway company? The able counsel for the insurance company has cited us to no authority upon the question, and we are aware of no case decided in this state in point, but counsel for defendant in error McCall has called our attention to cases decided in other jurisdictions, and we think these cases settle the question in McCall's favor. The case of Newcomb et al. v. Cincinnati Ins. Co., 22 Ohio St. 382, 10 Am. Rep. 746 (Sup. Ct.), is especially unequivocal and in point. That was a suit in which the Cincinnati Insurance Company sought to compel the refunding of $1,617.15, paid to Newcomb and others on a policy of insurance on account of injuries to their steamboat, resulting from a collision with another steamer. In an action by Newcomb and others against the steamer with which their boat had collided as negligent wrongdoers, they recovered a judgment for the losses sustained. These losses, in excess of the insurance, exceeded, as shown by the opinion of the court, $9,000; "their recovery was $11,086. The costs of prosecuting the action exceeded $6,000. The amount applicable to their excess of loss, after payment of expenses, was insufficient to satisfy it." In the lower court the case was decided in favor of the insurance company, but on appeal the Supreme Court of Ohio reversed that judgment, and rendered judgment in favor of Newcomb and others for the entire amount of the expenses incurred by them in the prosecution of their suit against the vessel causing the damage to the insured property. The court, in passing upon the case, announce what we believe to be the correct rule in such cases. The court said:

"Where the assured, as in case of partial insurance, sustains a loss in excess of the reimbursement or compensation of the underwriter, he has an undoubted right to have it satisfied by action against the wrongdoer. But if by such action there comes into his hands any sum for which, in equity and good conscience, he ought to account to the underwriter, reimbursement will, to that extent, be compelled in an action by the latter, based on his right in equity to subrogation. But the assured will not, in the form of conscience, be required to account for more than the surplus which may remain in his hands after satisfying his own excess of loss in full and his reasonable expenses incurred in its recovery, unless the underwriter shall, on notice and opportunity given, have contributed to, and made common cause with him in, the prosecution."

In the instant case the insurance company seeks to compel the insured to refund to it the full amount paid on the insurance policy, which is a little more than the excess of his loss as determined by the jury in the suit against the railway company, without reimbursing him for the expenses incurred in the prosecution of that suit. This, we think, in all good conscience he should not, under the circumstances shown, be required to do. Applying the rule announced in the case from which the above quotation is taken, and which we think ought to be done, the defendant in error McCall should not be required to account for more than the surplus which remained in his hands after satisfying his own excess of loss in full and his reasonable expenses incurred in its recovery. This was the view taken by the lower court, and in accordance therewith a judgment for such surplus was rendered. The insurance company, having failed and refused to "hazard the cost" of the suit against the railway company, or any part of it, the judgment is correct, and affords the insurance company no just cause of complaint. The claim of the insurance company that McCall was not entitled to be reimbursed for the expenses incurred by him in the prosecution of the suit against the railway company because of his attitude of hostility to the claim of the insurance company to subrogation is not tenable. It is undisputed that McCall recognized its right of subrogation, and agreed, before the suit against the railway company was instituted, with the insurance company's special agent and adjuster, "to assign the amount of the policy to him against the railway company" upon the payment of the loss, and, if it should be conceded that McCall and his attorney, after the institution of the suit and during its pendency, assumed an attitude of hostility to the insurance company's right of subrogation under the terms of the policy, still such attitude on their part could not have prevented the insurance company from paying or tendering to McCall the loss covered by the policy and its intervention by proper plea setting up its rights under the policy in the suit of McCall against the railway company. Having failed to pay the policy or make common cause with McCall in his suit against the railway company, the insurance company was in no position to successfully resist in this suit the allowance of the expenses incurred by McCall in the suit against the railway company. There was no issue raised in the trial court as to the reasonableness or necessity of the expenses shown to have been incurred by McCall in the railway suit, and it does not appear in any manner that said expenses were unreasonable or unnecessary. On the contrary, said expenses seem to have been properly pleaded and proved without any question being raised in regard thereto. In the state of the record before us McCall was

and is entitled to have the full amount of the expenses in question allowed, and the action of the court in refusing the special charge made the basis of the insurance company's first assignment of error and in directing a verdict in its favor of $110.82 was correct.

The third and fourth assignments of error raise the same questions discussed under the first and second assignments, and need not be further considered.

Believing the trial court rendered the proper judgment, it is affirmed.